\*\* NOT FOR PRINTED PUBLICATION \*\*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| FIFTH GENERATION COMPUTER CORP., § | | |
| § | | |
| *Plaintiff,* § | | |
| § | Civil Action No. 9:08-CV-205 | |
| v. § | | |
| § | | |
| INTERNATIONAL BUSINESS MACHINES § | JUDGE RON CLARK | |
| CORP., § | | |
| § | | |
| *Defendant.* § | | |

### ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE

Plaintiff Fifth Generation Computer Corporation ("FGC") filed suit against International Business Machines Corporation ("IBM"), claiming that IBM's Blue Gene supercomputers infringe United States Patent Nos. 4,843,540; 4,860,201; and 6,000,024. All of the patents are directed toward processes and systems for parallel computing. IBM now moves to transfer venue to the United States District Court for the Southern District of New York, on the grounds that the parties, most of the witnesses, and much of the documents and evidence likely to be relevant are located in that district.

No Blue Genes have been sold in Texas, and FGC has identified no act of infringement in the Eastern District of Texas. Only one potential witness has been identified as having any connection to Texas at all, and he lives 200 miles from Lufkin. Multiple potential witnesses are located in or near the Southern District of New York (i.e., two of the inventors, at least one integral member of the research and development team, and the prosecuting attorneys). Both

1

parties' principal places of business are located in the Southern District.  The court therefore finds that transfer to the United States District Court for the Southern District of New York is appropriate.

## I. Background

The following facts are undisputed, unless otherwise noted.  In 1986, the parallel processing work of Dr. Salvatore Stolfo, a computer science professor at Columbia University in New York City, was the subject of two United States patent applications filed by Columbia.  The '540 and '201 patents issued in 1989, with Columbia as the original assignee.  Columbia assigned the patents to Dr. Stolfo in 1993, who in turn assigned them to FGC in 1996.  FGC is a corporation organized under the laws of Delaware, with its principal place of business in New York City.  Dr. Stolfo is listed on the patents as living in Ridgewood, New Jersey.  Daniel P. Miranker, a named co-inventor on the '201 patent, is listed as living in Austin, Texas.[1]  The three attorneys who prosecuted these patents all worked in the New York City office of Brumbaugh, Graves, Donohue, and Raymond at the time.  Two are deceased, and the third now works for a different law firm in New York City.

In 1997, FGC filed a United States patent application directed to certain aspects of Dr. James Maddox's work on parallel processing technology.  Dr. Maddox was the Director of Engineering at FGC when he performed the work.  The application issued as the '024 patent in 1999, with FGC as the owner.  The '024 patent lists Dr. Maddox as living in Philadelphia.  According to FGC, he currently resides in New Jersey.  The four attorneys who prosecuted the

---

[1] Austin is located in the Western District of Texas.

'024 patent worked in the New York City office of Weil, Gotshal, and Manges at the time, and all still work in the New York area.

FGC filed suit against IBM on October 29, 2008, alleging that IBM's Blue Gene supercomputers infringe the '540, '201, and '024 patents. IBM is incorporated in New York and has its principal place of business in Armonk, New York.[2] The primary research and development for the Blue Gene took place at IBM's research center in Yorktown Heights, New York,[3] while the infrastructure and personnel supporting the Blue Gene-based Deep Computing Capacity on Demand service are located in Rochester, Minnesota. FGC asserts that development of the Blue Gene also occurred in California, New Mexico, and Minnesota. The chief architect of the Blue Gene, Alan Gara, works at IBM's Yorktown Heights location, as do several other employees whom IBM claims have knowledge of the Blue Gene's design, development, and manufacture.

The parties dispute the extent to which IBM's Blue Gene has a presence in this District. IBM asserts that while it has sold the Blue Gene to a number of institutions around the world, including several located in New York[4], it has never sold any Blue Gene system within the Eastern District of Texas. FGC argues that while IBM may not have sold the Blue Gene in this

---

[2]Armonk is located in Westchester County, just north of New York City and within the Southern District of New York.

[3]Yorktown Heights is also located in Westchester County, within the Southern District of New York.

[4]IBM is slightly disingenuous in this assertion. While the three institutions it mentions are all located in New York State, none are located in the Southern District of New York – Brookhaven National Laboratories and SUNY Stony Brook are both located in the Eastern District, and Rensselaer Polytechnic Institute is located in the Northern District.

district, it "specifically targeted" Texas by establishing a Blue Gene Deep Computing Capacity on Demand center in Houston[5]. Additionally, since the Blue Gene supercomputers are offered as part of an online service (Deep Computing Capacity on Demand) that is available worldwide via a secure VPN connection over the Internet, the Blue Gene is potentially available to customers in every district of the United States.

## II. Applicable Law

IBM moves to transfer venue pursuant to 28 U.S.C. § 1404(a).[6] Section 1404(a) provides that a district court may transfer a civil action to any district in which it might have been brought "[f]or the convenience of parties and witnesses" and "in the interests of justice." The goal of Section 1404(a) "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964). The threshold determination to be made under Section 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003), *cert. denied*, 540 U.S. 1049, 124 S. Ct. 826 (2003).

---

[5]Like IBM, FGC's statement is somewhat disingenuous, since Houston is located in the Southern, not the Eastern, District of Texas.

[6]The court is fairly sure this is IBM's argument, but does note that IBM's motion states, both in the title and on the first page, that it moves to transfer venue pursuant to "Fed. R. Civ. P. § 1404(a)." Doc. # 10.

If so, the court's analysis turns to the convenience of the parties and the witnesses. *In re Volkswagen of American, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008)[7] ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer."); *see also In re TS Tech USA Corp.,* – F.3d – , 2008 WL 5397522 at * 2 (Fed. Cir. Dec. 29, 2008) (applying *In re Volkswagen*).[8] This determination involves examining several private and public interest factors, none of which are given dispositive weight individually. *In re Volkswagen,* 545 F.3d at 315. The movant bears the burden of proof in demonstrating that a transfer is warranted. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of the witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

---

[7]The October 2008 *In re Volkswagen* opinion was the last in a long and complex line of decisions. The district court denied Volkswagen's motion to transfer venue in 2006, as well as its motion for reconsideration in 2007. The first appellate panel opinion in *In re Volkswagen of America, Inc.*, 223 Fed. App'x. 305 (5th Cir. 2007) (per curium), affirmed. After Volkswagen filed a petition for a panel rehearing, the order was withdrawn and eventually superceded by *In re Volkswagen of America, Inc.*, 506 F.3d 376, 380 (5th Cir. 2007), which reversed the district court. The Fifth Circuit subsequently granted rehearing *en banc*, *see In re Volkswagen of America, Inc.*, 2008 WL 400236 (5th Cir. Feb 14, 2008), which had the effect of vacating the panel opinion. *See Byrne v. Butler*, 845 F.2d 501, 507 (5th Cir. 1988). The court finally issued *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) in October 2008.

[8]The *TS Tech* court used the *In re Volkswagen* opinion as the sole basis for its decision. However, there were certain aspects of Fifth Circuit law on venue and transfer for convenience that were not presented in *In re Volkswagen*. Therefore, unwavering reliance on that single case may not be appropriate in patent cases. However, these issues have not been presented in this case either, so analysis at this time would be premature and, at best, an advisory opinion.

easy, expeditious, and inexpensive." *In re Volkswagen,* 545 F.3d at 315.  The public interest factors consist of (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws.  *Id*.

Although Fifth Circuit law holds that the Plaintiff's choice of forum is entitled to some deference, *In re Horseshoe Entertainment*, 337 F.3d at 434-35, the *In re Volkswagen* court made it clear that this is not an independent factor in a Section 1404(a) analysis.  *In re Volkswagen*, 545 F.3d at 314, n.10.  Rather, Plaintiff's choice of forum is taken into account because it "places a significant burden on the movant to show good cause for the transfer."  *Id.*

The Fifth Circuit has also sets out what it terms the "100 mile" rule, which requires that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re TS Tech*, 2008 WL 5397522 at *3 (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)).  Despite a suggestion that the 100 mile rule was "made up out of the whole cloth" by the *Volkswagen AG* panel and that the authority to do so is shaky at best, *In re Volkswagen*, 545 F.3d at 322, n.1 (King, J., dissenting), the recent *Volkswagen* opinion embraced the concept.  *Id.* at 317.

### III.  Analysis

A. <u>Whether the action could have been brought in the Southern District of New York</u>

28 U.S.C. § 1404(a) states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides."  Under Section 1391(c), a corporation like IBM resides "in any judicial district in which it is subject to personal jurisdiction at the time the

action is commenced." As IBM is both organized under New York law and has its principal place of business in the Southern District of New York, this action could have been brought in that district.

B.  Private Interest Factors

    1.  *The relative ease of access to sources of proof*

IBM argues that all of the documents relating to development of both the patents-in-suit and the accused Blue Gene supercomputer are located outside the Eastern District. FGC suggests that "evidence exists throughout the United States – not just in New York," and points to possible evidence in California, New Mexico, Minnesota, and Texas related to the development and administration of the Blue Gene. IBM established a Deep Computing Capacity on Demand center in Houston, Texas, and two Texas universities (Texas A&M University and University of Texas at Austin) were members of the Blue Gene consortium, which is described as "[a] community of Blue Gene users who share experiences, help understand and develop the application space, assist in application porting and tuning and provide feedback on functional requirements for next generation." Pl. Resp., Ex. G, at pp. 15-16 [Doc. # 18]. However, Houston is located in the Southern District of Texas, as is Texas A&M University. The University of Texas at Austin is located in the Western District.

FGC has failed to specifically identify any documents or evidence which might be kept in the Eastern District of Texas. The fact that IBM maintains an office in the Southern District of Texas related to its Blue Gene-based on-line service, when IBM has not actually sold any Blue Genes in Texas and there is no showing that this office is likely to be the situs of documents relevant to this infringement action, does not establish a connection to the Eastern District of

Texas. It is also not particularly relevant that two Texas universities were members of the Blue Gene consortium, especially when neither institution has purchased a Blue Gene or is located within the Eastern District. While documents related to the development of the Blue Gene may be located in places like California, New Mexico, Minnesota, and even the Southern District of Texas, FGC does not dispute that a number of documents are also located in the Southern District of New York. The court finds that this factor weighs in favor of transfer.

    2.    *The availability of compulsory process to secure the attendance of the witnesses*

IBM identifies a number of third party witnesses or classes of witnesses, such as co-inventors Salvatore Stolfo and James Maddox; individuals involved in the development at the Watson Research Center; and the prosecuting attorneys, who are all located in or near the Southern District of New York. At the same time, IBM concedes that "it is difficult to foresee if the availability of compulsory process will be an issue" so early in the case. Def. Mot. Transfer, at p. 12. While IBM suggests that any issues involving compulsory process will more likely be resolved in the Southern District of New York, that is pure speculation at this point. IBM itself has acknowledged that it has sold Blue Genes to institutions outside the Southern District of New York; much of the infrastructure relating to the Deep Computing Capacity on Demand services are located in Minnesota; and one of the co-inventors resides in Texas. This factor is neutral.

    3.    *The cost of attendance for willing witnesses*

As already discussed, witnesses in this case are likely located in New York, California, New Mexico, and Minnesota. The only specific witness located in Texas identified by FGC resides in Austin. FGC also alludes to the possibility that certain employees of the Deep Computing Capacity on Demand center located in Houston may be witnesses.

The Fifth Circuit's "100 mile" rule applies because the Southern District of New York is approximately 1500 miles away from the Lufkin, Texas. *In re Volkswagen AG*, 371 F.3d at 205. Few, if any of the potential witnesses are located near Lufkin; many are located in or near the Southern District of New York. Even accepting FGC's argument that some witnesses may be located in Rochester, Minnesota, Lufkin is only slightly closer to Rochester than New York City is. Lufkin is closer to both New Mexico and California, but FGC has failed to identify any specific witness who might come from these locations.

On the other hand, IBM has pointed to the fact that two of the three inventors and all of the prosecuting attorneys live or work in or near New York City. Both FGC and IBM have their principal place of business in the Southern District of New York, so any corporate employees who will testify will presumably be found in or near that location. IBM has identified at least one IBM employee heavily involved in development of the Blue Gene who also works in the Southern District of New York. This factor weighs in favor of transfer.[9]

4.  *All other practical problems that make trial of a case easy, expeditious, and inexpensive*

FGC's strongest argument against transfer is that, when compared to the docket of the Southern District of New York, resolution of this case will be faster and cheaper if it remains in the Eastern District of Texas. In the period between September 2006 and September 2007, the Southern District of New York saw a median time between filing to completion of 29 months for

---

[9] The Fifth Circuit in *In re Volkswagen* was comparing the daily costs of room, board, and incidentals (such as parking) in Dallas, Texas to Marshall, Texas. This court will not assume that the Fifth Circuit blindly identified a rule of "more miles equals more inconvenience." It is more logical to regard the "100 mile" rule as a factor that requires careful consideration based on the specific facts of a particular case.

jury trials. In contrast, the median time from filing to completion for a jury trial in the Eastern District of Texas was almost half the time: 17 months. Pl. Resp., Ex. B, at pp. 191-92. The difference in cost of litigating a case for 17 versus 29 months is not an insignificant one.

The actual costs of litigating a case in the Southern District of New York, from the rates of counsel to the price of a hotel room, are also greater than they would be in the Eastern District of Texas. The court also notes that IBM has, in the past, seen the Eastern District as a convenient and inexpensive forum, as it filed two patent cases against Amazon.com here in 2006 in connection with IBM's patents on the Prodigy on-line service and electronic procurement of goods. *See International Business Machines Corp. v. Amazon.com, Inc.*, 9:06-cv-452 and 6:06-cv-452, respectively. This factor weighs against transfer.

C.   Public Interest Factors

   1.   *The administrative difficulties caused by court congestion*

As discussed above, cases proceed from filing to jury trial in the Eastern District of Texas almost twice as fast as they do in the Southern District of New York. This factor weighs against transfer.

   2.   *The local interest in adjudicating local disputes*

This case has a very limited connection to Texas. There has not been a showing of any connection to the Eastern District at all. At best, one of the co-inventors on the '201 patent lives in Austin and IBM maintains a Deep Computing Capacity on Demand center in Houston. Neither Austin nor Houston is located in the Eastern District. Although the Blue Gene is potentially available to customers in every district of the United States because it is offered as part of an online service (Deep Computing Capacity on Demand) over the Internet, IBM has

never actually sold a Blue Gene in Texas. There is no showing that the online service has been offered in the Eastern District. Because there is little, if any, local interest in adjudicating this dispute, this factor weighs in favor of transfer.

      3.     *The familiarity of the forum with the law that will govern the case*

As already noted, judges in the Eastern District of Texas are very familiar with intellectual property litigation. In the past twelve months, this court alone has conducted eight patent jury trials and five *Markman* hearings. On the other hand, the courts of the Southern District of New York are well known for handling a docket of complex civil and criminal cases. There is no doubt that any court in New York to which this case is assigned will be well able to deal with issues of federal patent law. This factor is neutral.

      4.     *The avoidance of unnecessary problems in conflict of laws*

As federal patent law will apply to most of the issues in this case, there is no conflict of laws problem. This factor is neutral.

### IV. Conclusion

After careful analysis of the private and public interest factors, the court concludes that transfer is warranted in this case. Public interest factor 1 weighs against transfer, factors 3 and 4 are neutral, and factor 2 weighs in favor of transfer. Private interest factor 2 is neutral and factor 4 weighs somewhat against transfer. However, factors 1 and 3 – the relative ease of access to sources of proof and the cost of attendance for witnesses – both weigh fairly heavily in favor of transfer.

Key to the court's decision are the facts that no Blue Genes have been sold in Texas; no act of infringement has been identified as occurring in the Eastern District; only one potential

witness has been identified as having any connection to Texas at all; multiple potential witnesses are located in or near the Southern District of New York (i.e., two of the inventors, at least one integral member of the research and development team, and the prosecuting attorneys); and both parties have their principal places of business in the Southern District.  Although other witnesses and evidence may be located outside of New York, FGC fails to specifically identify any such individuals or documents to the court.   Under these facts, transfer to the Southern District of New York is appropriate.

IT IS THEREFORE ORDERED that Defendant International Business Machines Corporation's Motion to Transfer Venue [Doc. # 10] is GRANTED.   This case will be transferred to the United States District Court for the Southern District of New York.

So **ORDERED** and **SIGNED** this **13** day of **February, 2009.**

_____
  Ron Clark, United States District Judge